# CHARLESTON.

Detroit Steel Products Co. v. The Daily Telegraph Printing Co.

Submitted February 3, 1920.    Decided February 10, 1920.

1. Guaranty—*Contract Construed as Conditional.*

   A contract of guaranty of the payment of purchase money of goods, effected by means of letters, in one of which the guarantor says he will see the account paid, but wants the bill rendered promptly so he can take care of himself in settlement, and, in the other of which, the guarantee says he will render the invoices to the debtor, but will advise the guarantor of failure to remit within a reasonable time, after the maturity of the bill, which is thirty days from the date of shipment, is a conditional, not an absolute, contract.  (p. 534).

2. Same—*Agreed Modification is Part of Contract.*

   A slight modification of an offer of guaranty, favorable to the guarantor, made in the acceptance thereof and acquiesced in by him, is a part of the contract of guaranty.  (p. 534).

3. Same—*When Guarantor Discharged by Failure to Notify of Nonpayment.*

   Failure of the guarantee in a contract of guaranty, to comply with a condition of the contract requiring him to give the guarantor notice of non-payment, within a reasonable time after maturity of the debt, discharges the guarantor, if, within such reasonable time, the debtor has become insolvent, or conditions have changed in such manner as to work injury and damage to him.  (p. 534).

4.  SAME—*Reasonableness of Time for Performance of Conditions;
    Question for Jury.*

    What is a reasonable time in such case depends upon the
    nature of the contract, the situation of the parties thereto and
    all the circumstances, and, if upon these the court cannot see
    clearly and beyond doubt that the notice was given within
    such time, or after it had elapsed, the question of the reason-
    ableness of the time thereof is one for jury determination.   (p.
    534).

5.  SAME—*Guarantor's Knowledge of Receipt of Goods by Debtor
    and Amount of Bill do not Justify Peremptory Instruction
    Against Him.*

    Neither the defendant's knowledge of the receipt of the
    goods by the debtor and the amount of the bill, before ma-
    turity thereof, nor the voluntariness of his offer of guaranty
    nor both combined, will justify the giving of a peremptory
    instruction to find for the plaintiff, in such case.   (p. 537).

6.  SAME—*Debtor's False Representation of Payment Does Not
    Release Guarantor, Nor Does His Reliance Thereon Waive
    Condition of Notification.*

    A false representation of payment of the debt, made by the
    debtor to the guarantor, within the reasonable time allowed
    for notice of default, does not release the guarantor, nor does
    his reliance thereon amount to a waiver of the condition of
    the guaranty.   (p. 537).

    (RITZ, JUDGE, absent.)

Error to Circuit Court, Mercer County.

Action by the Detroit Steel Products Company against the
Daily Telegraph Printing Company.  Judgment for defendant
upon a directed verdict, and plaintiff brings error.

                          *Reversed and remanded.*

*A. F. Kingdon* and *French & Easley,* for plaintiff in error.
*Sanders & Crockett* and *A. G. Fox,* for defendant in error.

POFFENBARGER, JUDGE:

The principal grounds of the complaint on this writ of error
to a judgment for the defendant, on a directed verdict, in an
action by motion on a contract of guaranty, are the direction to
the jury to find for the defendant and refusal of the prayers
of the plaintiff for four instructions tendered by it.

The subject matter of the guaranty was an open account

for $411.93 with some interest, less $27.82, an allowance for freight paid, due the plaintiff from the Bluestone Construction Company, a corporation, for material, steel sash and accessories, used by it, in the erection of a building for the defendant. Being uninformed as to the financial worth and standing of that company and unable to find it rated in any of the commercial directories, the plaintiff, before accepting its order for the sash, amounting to $414.00, applied to the defendant for information as to the financial standing of the construction company, by a letter dated some time prior to October 27, 1916. Having had no reply to that letter, it repeated its request by a letter dated, October 27, 1916, and received a reply thereto dated, October 30, 1916, in which the president of the defendant company said: "I desire to state that they have excellent credit in this country, and have contracted to erect a building for us, and I authorize you to make this shipment at once, and we will see that the account is paid. Of course, we want the bill rendered promptly, so that we can take care of ourselves in settlement. However, the building has just been started, and we can take care of it very nicely." Thereupon, the plaintiff wrote in reply, as follows: "We thank you for your letter of October 30th., regarding the Bluestone Construction Company, and for your kind offer to see that the account is paid. In accordance with the signed order, we will render invoices to the contractors, but will advise you if they fail to remit within a reasonable time, after the account has matured, which will be thirty days from the date of shipment." The materials were shipped, and the invoice, dated November 14, 1916, was sent to the construction company. Before the completion of the building, that company filed a petition in voluntary bankruptcy and was duly adjudged a bankrupt. Repeated efforts of the plaintiff, made by letter at various times from December 21, 1916, until February 8, 1917, to obtain payment of the account, by the construction company, were unavailing. By a letter dated, February 14, 1917, four days after the date of the filing of the petition in bankruptcy, the plaintiff notified the defendant of the default and requested payment by it. Deeming its guaranty to have been conditional upon notice of the default, to be given by the plaintiff, within a reasonable time after the

maturity of the bill, and the plaintiff's delay in giving such a notice to have been unreasonable, the defendant refused to pay and denied liability. In the mean time, on December 4, 1916, it had paid to the Bluestone Construction Company the amount of an estimate in which was included the bill for the sash, amounting with the freight, to $436.50, and, on January 9, 1917, it had paid to the construction company all that was due it for work and materials up to that date, $2,120.00. The president of the defendant company says that, at the date of the payment of the estimate including the bill for sash, he was informed by the manager of the construction company, that the bill had been paid to the plaintiff.

The first instruction requested by the plaintiff and refused would have directed the jury to find for the plaintiff, peremptorily, if it had been given. The second would have left it to the jury to say whether the plaintiff had notified the defendant within a reasonable time after the bill became due, of the failure of the contractor to pay it, and directed them to find for the plaintiff, in such case. The third would have directed them to find for the plaintiff, if they believed the last payment to the construction company, by the defendant, had been made before a reasonable time had expired after the maturity of the bill. The fourth would have told them the failure of the plaintiff to send the bill to the defendant was immaterial and constituted no ground of defense, and that, if they believed from the evidence the defendant had money with which it could have paid the account, at the time of its knowledge of the delivery of the materials, they should find for the plaintiff.

The first and fourth instructions asked for by the plaintiff treated the contract between the parties as one guaranteeing the payment of the bill absolutely and unconditionally, and the other two treated it as a conditional contract of guaranty, leaving to the jury only the question of reasonableness of the time in which the notice of default was given. The peremptory instruction given at the instance of the defendant was based upon the theory of a conditional guaranty, but it withheld from the jury the inquiry as to the reasonableness of the time of the notification, upon the assumption that the delay had been unreasonable, as matter of law. Hence, it is manifest that one

of the vital questions in the case is the correct interpretation of the contract involved.

It would be at variance with a fundamental and uniformly recognized rule of interpretation, to say the sentence in the letter of October 30, 1916, relating to the rendition of the bill for the goods, was inserted without purpose. There is a presumption that every word, phrase and clause used in any written instrument was put into it for some purpose. Limitation or qualification of the guaranty made in the letter is the only substantial purpose the sentence could have had. Besides, the words of guaranty, taken in connection with what follows, express clear and undoubted intention to pay the bill, if at all, out of money to become due to the contractor. Considered as a whole, the letter cannot be deemed to have expressed an agreement to pay the bill at all hazards, or in any event. And it is equally clear that prompt rendition of the bill was required by the defendant as a means of enabling it to make payment out of the money to become due to the construction company. Whether this requirement was intended to be a condition of the guaranty might not be entirely clear, however, if the plaintiff had not placed its own interpretation upon the letter. The defendant might have obligated itself unconditionally to pay the bill, and then required prompt rendition thereof, as a mere matter of convenience to itself. Compliance therewith would have relieved it of the necessity of ascertainment of the date and amount of the bill, from some other source. If, however, the guaranty was susceptible of a double interpretation, the plaintiff had clear right to accept it in accordance with the one most favorable to the guarantor. The plaintiff put such an interpretation upon it, for it was careful to observe the modifying clause in the defendant's letter and obligate itself to give notice of default within a reasonable time, in a manner only slightly different from that suggested by the defendant's letter. Strict compliance with the order for the goods required the invoice to go to the contractor instead of the guarantor, but an equivalent was substituted, notice of default in a reasonable time after maturity of the bill. In this modification, the defendant acquiesced and that made it a part of the contract. *McKell* v. *Chesapeake &c.*

*Railroad Co.,* 175 Fed. 321; *English etc. Co.* v. *Arduin,* L. R. 5 H. L. 64, 80; 13 C. J. 283.

The insolvency of the principal debtor, the construction company, inflicts inevitable loss upon either the plaintiff or the defendant, wherefore principles respecting notice and demand of payment, applicable in cases in which the debtor is solvent, need not be regarded. What is a reasonable time for notice of default, under the circumstances of this case, is always important and such notice within such time is always required to fix liability upon the guarantor, or prevent his discharge. Brandt, Suretyship and Guaranty, sec. 217; Stearns, Suretyship, sec. 58, p. 91. There are no doubt cases in which the court could say, as matter of law, notice has been given within a reasonable time or not within such time. As the circumstances of each case control, they may be such as to make it clear and unquestionable in either case. In *Craft* v. *Isham,* 13 Conn. 28, notice of default, given more than two years after the date thereof and about a year after the debtor had become insolvent, was held not to have been given in reasonable time. In *Salem Manufacturing Co.* v. *Brower,* 4 Jones Law, N. C. 429, in which it was held that the guarantor could have suffered no loss from lack of notice, there is a dictum to the effect that what is a reasonable time is a question of law, but it is not to be assumed, that the court intended to say it is so in all cases. The contrary has been asserted in *Barnes Cycle Co.* v. *Reed,* 91 Fed. Rep. 481; *Averill Fertilizer Co.* v. *Byfield,* 9 Ind. App. 180; *Sewing Machine Co.* v. *Mills,* 55 Ia. 543; *Singer Manufacturing Co.* v. *Littler,* 56 Ia. 651. These cases, as well as *Wadsworth et al.* v. *Allen,* 8 Gratt. 174, hold that, ordinarily, what is a reasonable time for notice in the law of guaranty, is a question of fact for jury determination. For this proposition, there is a clear and decided weight of authority.

To determine whether notice was given within a reasonable time, so as to bind the guarantor, or after the lapse of reasonable time, so as to permit it to be discharged from liability, it is necessary to consider the law of the case, all of the facts and circumstances and the situation of the parties. The guaranty is one of payment, not mere indemnity against loss. *Stuart* v. *Carter,* 79, W. Va., 92. The bill matured December 14, 1916.

The notice of the default was dated, February 14, 1917. In as much as the defendant paid to the contractor all that was due, on January 9, 1917, and no longer had anything in its hands belonging to the contractor, out of which payment could be made, notice given between the 9th of January and the 14th. of February, might not have availed anything. If the defendant was not hurt by failure to give notice between said dates, it cannot complain of the lack thereof. To discharge the guarantor, delay and damage must both concur. Brandt, Suretyship and Guaranty, sec. 223. If the principal is insolvent when the debt becomes due, no demand upon him nor notice of his default to the guarantor, is necessary. Brandt, Suretyship and Guaranty, sec. 223. It necessarily follows that, if notice of default within a reasonable time is a condition of a guaranty, and such time expires and the debtor becomes insolvent before the expiration thereof, and the creditor has had no notice of his failing circumstances, demand of payment and notice of default to the guarantor are unnecessary, because they would be unavailing to save him from loss or damage. Hence, the period of delay for the purposes of this case was from December 14, 1916, until January 9, 1917, after which date there was no money of the debtor in the hands of the guarantor, from which payment could be made, and, on which date the debtor must have been insolvent. The defendant's witness does not claim it could have protected itself after that date. There is no evidence in the record tending to show that the creditor had any knowledge of the failing circumstances of the debtor, nor any proof that the guarantor knew it was insolvent. All knowledge of that fact is directly and emphatically denied by its president. The plaintiff waited about a week after the maturity of the debt, before it demanded payment. The first demand was made, December 21, 1916, the second December 29, 1916, and the third, January 6, 1917. The futility of these demands sufficed to appraise the plaintiff that the debtor was not prompt in payment, and may have been sufficient to raise a doubt in the mind of a prudent man, as to its financial soundness. On the other hand, the defendant had been advised or informed that the debt had been paid. Though it could not rely upon this representation and was not thereby released from its obligation

to the plaintiff, the circumstance may have tended to lull it into a sense of security and induced it to refrain from action in the premises for its protection.   In view of all the facts and circumstances, we are of the opinion that the question of reasonableness of time of notice was one for jury determination, wherefore the court did not err in refusing the plaintiff's first and fourth instructions and did err in its direction of a verdict in favor of the defendant.   This conclusion also condemns the action of the court in its refusal of the second and third instructions asked for by the plaintiff.

The defendant's knowledge of the receipt of the goods and amount of the bill does not constitute ground for the peremptory instructions sought by the plaintiff.   Nor does this fact supplemented by the additional one that the offer of guaranty was voluntary do so.   It was entitled to notice of default in payment.   Nor does it signify anything that an inquiry would have elicited knowledge of non-payment.   The plaintiff undertook to give notice thereof and the defendant could rightfully rely upon that undertaking.   On the other hand, the false representation of payment, made by the debtor, did not release the guarantor nor justify the direction of a verdict in its favor.   In so far as it relied upon that representation, it did so at its peril, and its reliance upon it does not argue intention to waive the condition of the guaranty, for the defendant was under no duty to act until it received notice of default.

The contention, made in oral argument, that the guaranty was the personal contract of the president of the defendant corporation, is not well founded.   Although he appended his own signature to the letter, describing himself as "President, Daily Telegraph Printing Co.", the correspondence evidencing the contract, of which this letter is a part, as well as the oral evidence, clearly shows the contract was made by him for and on behalf of the corporation.   *Deitz* v. *Prov. Wash. Ins. Co.,* 31 W. Va. 851; *Murdock* v. *Franklin Ins Co.,* 33 W. Va. 407; *Coulter* v. *Blatchley,* 51 W. Va. 163.

For the errors noted the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*